UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IOU CENTRAL, INC.,

      Plaintiff,

                                      Case No. 1:21-cv-811

v.

                                        Hon. Hala Y. Jarbou

DIVISION AVENUE, LLC, et al.,

      Defendants.

_____/

## **OPINION**

Plaintiff IOU Central, Inc. ("IOU Central") initiated this action against Division Avenue, LLC ("Division"), Ron Jordan Sr., Ron M. Jordan, Princess Thacker, Jordan Restaurant Group, LLC ("JRG"), and Jordan Hospitality Group, LLC ("JHG") alleging state law claims for breach of contract and unjust enrichment. Summons for these Defendants were returned executed on October 18, 2021. Each Defendant failed to answer or otherwise respond to the Complaint. On October 20, 2021, the Clerk of Court entered default against Division, Ron Jordan Sr., Ron M. Jordan, JRG, and JHG. On October 21, 2021, the Clerk of Court also entered default against Thacker.

IOU Central also alleges a claim of tortious interference with contract against Defendants Bardwell Creative, Inc. ("Bardwell") and Angela Glazier-Rines. Summons for Bardwell and Glazier-Rines were returned executed on October 18, 2021. Both Defendants failed to timely answer or otherwise respond to the Complaint. On October 20, 2021, default was entered against Bardwell and Glazier-Rines. Glazier-Rines then filed a pro se answer to the Complaint on November 22, 2021, and the Court vacated the previous entry of default. She subsequently failed

to appear for a Rule 16 Scheduling Conference on March 1, 2022 and to respond to an Order to Show Cause.  On March 29, 2022, default was again entered against Glazier-Rines.

Before the Court is IOU Central's motion for default judgment against all Defendants except Ron M. Jordan who has filed for bankruptcy.  This case is stayed with respect to this Defendant pursuant to 11 U.S.C. § 362.  However, "[e]xtending a stay to nonbankrupt co-defendants is justified only in 'unusual circumstances.'"  *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000) (quoting *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir. 1992)).  "[A]bsent unusual circumstances the stay 'does not extend . . . to separate legal entities such as corporate affiliates, partners in debtor partnerships, or to codefendants in pending litigation.'"  *Id.* (quoting *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)).  Accordingly, the Court will proceed to address the claims against the remaining defendants.

## I. BACKGROUND

Division is a limited liability company that owned and operated a restaurant in Grand Rapids, Michigan.  (Compl. ¶ 10, ECF No. 1.)  On April 16, 2019, Division applied for and received a commercial loan from IOU Central in the amount of $222,000.  (*Id.* ¶ 12.)  Division executed a promissory note promising to return the $222,000 plus interest and fees.  (*Id.*; Promissory Note ¶ 2, ECF No. 39-1.)  The loan contains a security provision naming the property and assets of Division as collateral for the loan.  (Compl. ¶ 16.)  It also includes a choice of law provision naming Georgia as the governing law.  (Promissory Note ¶ 23.)  At closing, IOU Central and Division also executed a debit agreement authorizing payments on the loan from Division's account to IOU Central's account.  (Compl. ¶ 24.)

Ron Jordan Sr. and Thacker each signed and delivered personal guaranties of the loan to IOU Central for which they are jointly and severally liable.  (*Id.* ¶¶ 18, 20; Pers. Guar. Agreements, ECF Nos. 39-2, 39-4.)  The guaranty agreements lack a security provision but do name Georgia as

the governing law.  (Pers. Guar. Agreements ¶ 11.)  Unlike Ron Jordan Sr. and Thacker, JRG and JHG did not sign personal guaranty agreements.  (*See* Compl. ¶ 27.)  However, JRG and JHG are owned, managed, and operated by Ron Jordan Sr. and Thacker.  (*Id.*)  These Defendants also sold Division to satisfy the debts of JRG and JHG.  (*Id.* ¶ 26-27.)

Division stopped paying off the loan on November 20, 2019.  (*Id.* ¶ 29; Pl.'s Verification & Aff. of Relief Due ¶ 6, ECF No. 39-5.)  On November 22, 2019, IOU Central called Ron Jordan Sr. and wrote to Division regarding the lack of payment.   (Pl.'s Verification & Aff. of Relief Due ¶ 6, 8.)   On November 25, 2019, IOU Central wrote to Division inquiring about a stop payment that was placed on the loan and warning of the potential for default.  (*Id.* ¶ 7.)  IOU Central again called and left voicemails with Division on February 25, 2020, and March 11, 2020. (*Id.* ¶ 8.)  IOU Central never received a response to these calls and letters.  (*Id.* ¶¶ 6-8.)  An outside collection agency also made weekly calls to Division from December 6, 2020, until March 11, 2020.  (*Id.* ¶ 8.)  After Division's default, Ron Jordan Sr. and Thacker failed to guarantee the loan. (Compl. ¶ 29).  Ron Jordan Sr. and Thacker then sold Division's property and assets.  (*Id.* ¶ 26, 29.)

Bardwell is a debt relief company that helps companies resolve their debts through negotiated settlements with creditors in exchange for a percentage of the original loan. (*Id.* ¶ 58, 62.)  Glazier-Rines is an officer of Bardwell.  (*Id.* ¶ 62.)  Bardwell and Glazier-Rines counseled Division, Ron Jordan Sr., and Thacker to stop payments on the loan, cease all communications with IOU Central, and sell the property and assets of Division.  (*Id.* ¶ 63, 66.) Bardwell and Glazier-Rines also assumed power of attorney over Division's financial obligations to creditors, including IOU Central's loan.  (*Id.* ¶ 61; Pl.'s Verification and Aff. of Relief Due ¶ 11.)  Bardwell and Glazier-Rines contacted IOU Central on behalf of Division four times

between November 25, 2019, and January 14, 2020, in an attempt to restructure the loan.  (Pl.'s

Verification & Aff. of Relief Due ¶ 9.)  IOU Central did not respond to these requests to negotiate.

(*Id.*)

## II. STANDARD

Rule 55(b) of the Federal Rules of Civil Procedure governs the entry of default judgment.

(b) Entering a Default Judgment.

> (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

> (A) conduct an accounting;

> (B) determine the amount of damages;

> (C) establish the truth of any allegation by evidence; or

> (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

However, the entry of default does not automatically entitle a plaintiff to a default

judgment.  The Court has discretion in granting default judgment.  *See United Coin Meter Co.,*

*Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  A default judgment may be

entered without a hearing unless it is necessary to determine the amount of monetary damages.

Fed. R. Civ. P. 55(b)(2).

4

## III. ANALYSIS

### A. Jurisdiction & Claims

Once default has been entered against a defendant, the Court must treat a plaintiff's well-pleaded facts as true, except for allegations relating to the amount of damages.  *See, e.g.*, *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006); *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default judgment "conclusively establishes every factual predicate of a claim for relief").  This includes "exhibits attached to the complaint, public records, and items appearing in the record of the case . . . so long as they are referred to in the complaint and are central to the claims contained therein."  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).  It also includes "jurisdictional averments."  *Ford Motor Co.*, 441 F. Supp. 2d at 846 (citing *Visioneering Constr. v. U.S. Fidelity & Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)).

#### 1. Subject-Matter Jurisdiction

The Court has proper subject matter jurisdiction pursuant to 28 U.S.C. § 1332 ("diversity").  Diversity jurisdiction exists where parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

Here, the parties are citizens of different states.  An individual is a citizen of the state in which he or she is domiciled.  *See Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019).  Ron Jordan Sr. and Thacker are domiciled in and citizens of Ohio.  (Compl. ¶ 2.)  Glazier-Rines is domiciled in and a citizen of Massachusetts.  (*Id.* ¶ 4.)

A corporation is a citizen of both the state in which it is incorporated and the state in which its principal place of business is located.  28 U.S.C. § 1332(c)(1).  IOU Central is a citizen of both Delaware and Georgia.  IOU Central is incorporated under Delaware law and maintains its principal place of business in Georgia.  (Compl. ¶ 1).  Bardwell is a citizen of Massachusetts.

Bardwell is incorporated under the laws of Massachusetts and maintains its principal place of business in the state.  (*Id.* ¶ 4).

The citizenship of a limited liability company is determined by the citizenship of each of its members.  *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010).  Consequently, "[w]hen diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company. And because a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well."  *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).  Division is a limited liability company whose members are Ron Jordan Sr., Ron M. Jordan, Thacker, Robert McCarthy, LLC, and JRG.  (Compl. ¶ 2).  Ron Jordan Sr., Ron M. Jordan, and Thacker are citizens of Ohio.  (*Id.*)  Robert McCarthy, LLC contains one member, Robert McCarthy, who is a citizen of Ohio.  (*Id.*)  JRG is a limited liability company whose members are Ron Jordan Sr., Ron M. Jordan, Thacker, and Keith L. Warren—all citizens of Ohio.  (*Id.* ¶ 3.)  JHG shares the same members as JRG and is accordingly also a citizen of Ohio.  (*Id.*)  Thus, IOU Central is a citizen of both Delaware and Georgia, and Defendants collectively are citizens of Ohio and Massachusetts.

The amount in controversy requirement is also satisfied.  The amount in controversy "alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount."  *Keppler v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).  IOU Central pled in good faith that the amount in controversy exceeds $75,000.  Thus, diversity jurisdiction exists over this action.

### 2. Personal Jurisdiction

In a diversity action, federal courts apply the law of the forum state to determine whether an out-of-state defendant is subject to personal jurisdiction. *Marine Collections & Recovery, LLC v. M/Y Yemaya*, 427 F. Supp. 3d 962, 966 (W.D. Mich. 2019) (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012)).  An out-of-state defendant can be subject to general or limited personal jurisdiction. *Id.* (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 833, 888 (6th Cir. 2002)).  The exercise of limited personal jurisdiction, however, must not deny the defendant constitutional due process.  *Id.*  To satisfy due process, (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action must arise from the defendant's activities there," and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mor-Dall Enter., Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 877 (W.D. Mich. 2014) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Division is subject to general personal jurisdiction under Michigan law.  A limited liability company is subject to general personal jurisdiction in Michigan when it "carr[ies] on [] a continuous and systematic part of its general business within the state."   Mich. Comp. Laws § 600.731.  Prior to its closure and sale, Division operated as a restaurant in Grand Rapids, Michigan.  (Compl. ¶ 10.)

Ron Jordan Sr. and Thacker are subject to limited personal jurisdiction. Michigan's long-arm statute confers limited personal jurisdiction over a non-resident defendant in the presence of certain relationships between a defendant and the state.  One such relationship exists when an individual or limited liability company transacts any business within the state.  Mich. Comp. Laws

7

§ 600.705(1); Mich. Comp. Laws § 600.735(1).  The Sixth Circuit and the Michigan Court of Appeals have found that personally guarantying a loan qualifies as transacting business within the state.  *See, e.g.*, *Citizens Bank v. Parnes*, 376 F.App'x 496, 501-02 (6th Cir. 2020) (affirming personal jurisdiction over a defendant who guaranteed a loan executed in Michigan and signed in his capacity as President of a Michigan corporation); *Lazzaro v. Charlevoix Lakes*, 310 N.W.2d 295, 297 (Mich. Ct. App. 1981) (affirming personal jurisdiction over a defendant who guaranteed a loan executed outside of Michigan but whose funds were intended for use within the state).  Here, Ron Jordan Sr. and Thacker personally guaranteed the loan granted by IOU Central to Division, which Division used to operate a restaurant in Grand Rapids.

The exercise of jurisdiction over Ron Jordan Sr. and Thacker would not offend principles of due process.  First, Defendants purposefully availed themselves of Michigan law by personally guarantying a loan intended to be used to conduct business in Michigan.  Second, IOU Central's cause of action arises out Ron Jordan Sr. and Thacker's failure to satisfy the defaulted loan amount.  Third, the exercise of jurisdiction over these Defendants is reasonable because they not only guaranteed Division's loan but also owned and operated Division's business in Michigan themselves.  Thus, the Court may exercise limited personal jurisdiction over Ron Jordan Sr. and Thacker.

Bardwell and Glazier-Rines[1] are also subject to limited personal jurisdiction.  Another relationship that gives rise to the exercise of long-arm jurisdiction over an individual or

---

[1] By filing a pro se answer prior to the entry of a second default, Glazier-Rines did not waive personal jurisdiction and submit to the general jurisdiction of the Court.  "Only those submissions, appearances, and filings that give plaintiff a reasonable expectation that [defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking, result in waiver of a personal jurisdiction defense." *Gerber v. Roirdan*, 649 F.3d 514, 519 (6th Cir. 2011) (internal quotations omitted).  Although Glazier-Rines did not explicitly raise personal jurisdiction as a defense in her pro se answer, she does appear to dispute her connections to Michigan.  (Answer to Compl. ¶ 9, ECF No. 21.)  Regardless, the Court finds an independent basis to exercise personal jurisdiction.

incorporated entity exists when a defendant does or causes "an act to be done, or consequences to occur in the state resulting in an action for tort."  Mich. Comp. Laws § 600.705(2); Mich. Comp. Laws § 600.715(2).  "In the context of a business tort, such as a tortious interference claim . . . the consequences of the tortious conduct may occur in a state other than the state in which the tortious conduct physically occurred." *Air Sys., Inc. v. Newton*, No. 18-13889, 2019 WL 1281919, at *4 (E.D. Mich. Mar. 19, 2019) (citing *Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671, 681 (E.D. Mich. 2012)).  Bardwell and Glazier-Rines directed Division to stop making loan payments, cease all communications with IOU Central and sell the property and assets of Division.   The consequences of these actions resulted in Division defaulting on the loan and disposing of the Michigan property over which IOU Central had a secured lien.  In other words, the consequences of these Defendants' actions occurred in Michigan.

The exercise of jurisdiction over Bardwell and Glazier-Rines satisfies due process. First, Defendants purposefully availed themselves of Michigan law. The purposeful availment requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). By expressly assuming power of attorney over Division's loan, attempting to renegotiate its terms, and encouraging the sale of Division's Michigan property, Bardwell and Glazier-Rines themselves created a connection to the forum state. Second, IOU Central's claim of tortious interference with contract arises out of these Defendants' actions with respect to the loan.  Third, the exercise of personal jurisdiction over these Defendants is reasonable.  "When the first two prongs of our personal jurisdiction test are met, there is an inference of reasonableness and 'only the unusual case will not meet this third criteria.'" *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894,

903-04 (6th Cir. 2017) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 545 (6th Cir. 2007)).  Litigating in Michigan unquestionably imposes a burden on Bardwell and Glazier-Rines.  However, IOU Central filed suit in Michigan, where Division is located, as opposed to taking advantage of the forum selection clause in the loan and guaranty agreements and litigating in its home state.  Michigan's interest in adjudicating a claim that relates to Division's business in Michigan is also compelling. Accordingly, the exercise of personal jurisdiction over Bardwell and Glazier-Rines does not offend principles of due process.

JRG and JHG, however, are subject to neither general nor limited personal jurisdiction. With respect to general jurisdiction, JRG and JHG are not formed under the laws of Michigan, did not consent to the exercise of jurisdiction, and do not operate a substantial portion of their general business in the state.  *See* Mich. Comp. Laws § 600.731(1)-(3).  With respect to limited personal jurisdiction, JRG and JHG have not transacted any business within the state.  *See* Mich. Comp. Laws § 600.735(1).  IOU Central alleges that JRG and JHG "became liable" for Division's loan as "successors and assigns" of Division.  (Compl. ¶ 27.)  However, IOU Central fails to explain how it came to this legal conclusion.  IOU Central merely states that "it was foreseeable that JRG and JHG would be bound by the [l]oan" because JRG and JHG are "closely related" to Division through their common ownership and alleged sharing in the proceeds from the sale of Division. (*Id.* ¶ 26–27.)  The Court is not persuaded this attenuated connection to the loan suffices to establish limited jurisdiction or to satisfy the purposeful availment requirement of due process.

### 3. Claims

The existing record is sufficient to establish breach of contract claims against Division, Ron Jordan Sr., and Thacker.  Georgia law applies to these breach of contract claims because both the loan and guaranty agreements contain choice of law provisions.  (Promissory Note ¶ 23; Pers. Guar. Agreements ¶ 11.) A breach of contract claim under Georgia law requires a plaintiff to

demonstrate: (1) the existence of a valid contract, (2) a material breach of its terms, and (3) resulting damages to the non-breaching party.  *See Nat'l Fire Ins. Co. of Hartford v. Thrasher Contracting, LLC*, 142 F. Supp. 3d 1309, 1312 (N.D. Ga. 2015) (citing *TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009)).   Accepting the facts alleged in the complaint as true, IOU Central adequately pled a breach of contract claim.  IOU Central entered into valid loan and guaranty agreements with Division, Ron Jordan Sr., and Thacker.  These Defendants materially breached their agreements by not rendering or guarantying payment of the loan to IOU Central.  Finally, IOU Central suffered damage by not recovering the principal amount plus interest and fees on the loan.

IOU Central pleads claims of unjust enrichment against Division, Ron Jordan Sr., and Thacker in the alternative.  An unjust enrichment claim under Michigan law requires a plaintiff to establish: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant."  *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017) (quoting *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (2003)).  Here, IOU Central extended a loan to Division for the benefit of both Division and its officers Ron Jordan Sr. and Thacker.  Equity requires that IOU Central be compensated in accordance with the executed loan and guaranty agreements.

IOU Central has also pled a claim of tortious interference with contract against Bardwell and Glazier-Rines.  A claim for tortious interference with contract under Michigan law requires a plaintiff to show: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by defendant."  *Crestmark Bank v. Electrolux Home Prods., Inc.*, 155 F. Supp. 3d 723, 745 (E.D. Mich. 2016) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 845, 848-49 (Mich. Ct. App. 2005)).  The "third element of this

11

involves a showing of 'a *per se* wrongful act or [] a lawful act with malice and without justification for the purpose of invading the contractual rights or business relationship of another.'" *Id.* (quoting *Urb. Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x 495, 514 (6th Cir. 2007)). "The conduct must be 'improper,' and 'improper interference requires both the absence of justification and the purpose of interfering with [the] plaintiff's contractual rights.'" *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local* 150, 439 F. Supp. 3d 933, 942 (E.D. Mich. 2020) (quoting *Winiemko v. Valenti*, 513 N.W.2d 181, 185 & n.3 (Mich. Ct. App. 1994)). A valid loan agreement existed between IOU Central and Division which Division breached. Bardwell and Glazier-Rines directed Division, Ron Jordan Sr., and Thacker to discontinue loan payments, cease communications with IOU Central, and sell the property and assets of Division. Bardwell and Glazier-Rines also assumed power of attorney on behalf of Division and contacted IOU Central to restructure the debt. Taking these factual allegations as true, Bardwell and Glazier-Rines acted without justification and induced Division to breach the loan agreement. Therefore, Bardwell and Glazier-Rines tortiously interfered with the contract.

**B. Equitable Relief**

IOU Central asks the Court to grant an equitable lien over the property of Division, Ron Jordan Sr., and Thacker. The loan agreement between IOU Central and Division reads:

> 21. GENERAL SECURITY AGREEMENT
> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower under this Note and all extensions, renewals, and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, person or mixed and whether tangible or intangible . . .

(Promissory Note, ECF No. 39-1.)

IOU Central is entitled to an equitable lien over the real and personal property of Division pursuant to the loan agreement.  The guarantees signed by Ron Jordan Sr. and Thacker, however, lack a similar provision.  Instead, IOU Central asks the Court to read the loan agreement and the personal guarantees together and apply the provision quoted above to grant an equitable lien or constructive trust over the property of the guarantors as well.  In support of this request, IOU Central cites cases from both the Georgia Court of Appeals and the Eleventh Circuit.   In *Wells Fargo Bank, N.A. v. Mitchell's Park, LLC*, the Eleventh Circuit read a loan and guaranty agreement together to correct an error made in the guaranty agreement's liability clause.  *See* 615 F. App'x 561, 564 (11th Cir. 2015).  But the guaranty agreement itself still contained a security clause.  In *C.L.D.F. Inc. v. Aramore LLC*, the Georgia Court of Appeals likewise corrected an error in a guaranty agreement which named the incorrect principal debtor.  *See* 659 S.E.2d 695, 696 (Ga. Ct. App. 2008).  IOU Central asks this Court not to correct an error in a guaranty agreement but to grant an equitable lien on the personal property of a guarantor in the absence of an explicit contractual provision in the guaranty agreement.   IOU Central has not provided sufficient precedent in support of this equitable relief requested.  IOU Central is only entitled to an equitable lien over the real and personal property of Division.

### C. Monetary Relief

#### 1. Breach of Contract

IOU Central seeks the remainder of the principal balance and the loan guarantee fee from Division and its guarantors, Ron Jordan Sr. and Thacker.  In support of this request, IOU Central has submitted an affidavit from Brittney Pierce, a paralegal for IOU Central, attesting to the amounts owed. Based upon the evidence presented, IOU Central is entitled to (1) the principal balance of $95,635.94 remaining on the loan after payments ceased on November 20, 2019, and (2) the remainder of loan guarantee fee equaling $13,538.30.  IOU Central's affidavit filed along

13

with its motion for default judgment does not seek prejudgment interest. (Pl.'s Verification and Aff. of Relief Due ¶ 5, ECF No. 39-5.) Accordingly, the Court will not consider the prejudgment interest requested in the complaint. Because the Court grants default judgment and monetary relief as to IOU Central's breach of contract claim, it does not need to alternatively consider the unjust enrichment claim. *See Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1378 (N.D. Ga. 2012) (citing *Bogard v. Inter-State Assurance Co.*, 589 S.E.2d 317, 319 (Ga. Ct. App. 2003)) ("If a valid contract in fact exists, then Plaintiff cannot succeed on an alternative theory of recovery for unjust enrichment.").

### 2. Tortious Interference with Contract

IOU Central seeks to recover the principal amount remaining on the loan or nominal damages in the amount of $8,000 from Bardwell and Glazier-Rines. IOU Central's motion for default judgment also requests injunctive relief against Bardwell and Glazier-Rines. (Pl.'s Mot. for Default J. 18, ECF No. 39.) Because IOU Central did not request injunctive relief in its complaint, however, the Court will only address monetary relief. IOU Central has established that Bardwell and Glazier-Rines tortiously interfered with the loan agreement. However, IOU Central fails to support its contention that these Defendants are responsible for the amount due on the loan. IOU Central analyzes its claim for tortious interference under Georgia not Michigan law and concludes by stating, "Plaintiff is also entitled to damages against Bardwell and Glazier for the principal sum of the Loan." (*Id.*) Absent further justification, IOU Central is not entitled to recover the amount due on the loan from Bardwell or Glazier-Rines. With respect to the nominal damages requested, IOU Central has not demonstrated how it suffered $8,000 in damages as a result of the interference. IOU Central merely states that this amount is "less than its attorney's fees." (*Id.*) The Court denies IOU Central's request for monetary damages of an uncertain amount. *See* Fed. R. Civ. P. 55(b)(2).

### 3. Attorney's Fees

Finally, IOU Central is entitled to recover attorney's fees from Division, Ron Jordan Sr., and Thacker pursuant to their respective contractual agreements with IOU Central. *See State v. United States*, 986 F.3d 618, 631 (6th Cir. 2021) (explaining that the American Rule demands litigants pay their respective attorney's fees absent the existence of a statute or valid contract).  The loan agreement between IOU Central and Division states:

> 12. <u>ACCELERATION</u>
> If any payment required under this Note is not received when due, or upon another Event of Default, after the expiration of any notice and grace period required by applicable law, and Lender declares an Event of Default, then, at Lender's option, the following will become immediately due and payable without notice of dishonor or presentment . . . (iii) all sums advanced and costs and expenses incurred by Lender in connection with this Loan, including attorneys' fees and any other costs incurred by Lender in enforcing Borrower's obligations under this Note.

(Promissory Note, ECF No. 39-1.)

The guaranty agreements between IOU Central, Ron Jordan Sr., and Thacker state:

> 1. <u>GUARANTEED DEBT</u>
> Guarantor agrees that the Guaranteed Debt shall consist of all amounts owed by Borrower under the Note, including…(vii) Lender's other costs and expenses of enforcing the Note including, but not limited to, attorneys' fees, and the costs of any arbitration proceeding to enforce the Note against the Borrower.

(Pers. Guar. Agreements, ECF Nos. 39-2, 39-4.)

Under Georgia law, if a loan or guaranty agreement provides for the payment of attorney's fees but does not include a specific percentage, such a provision is construed to mean 10 percent of the principal and interest when the amount owed is greater than $500. Ga. Code § 13-1-11(a)(2). Because IOU Central seeks to recover only the principal amount without interest, the attorney's fees are calculated from the remaining principal balance.  Thus, IOU Central is entitled to an award of $9,563.59 in attorney's fees along with $400 in filing fees.

## IV. CONCLUSION

For the reasons stated, the Court will grant IOU Central's motion for default judgment as to all Defendants except JRG, JHG, and Ron M. Jordan.  Plaintiff is entitled to monetary damages from Division, Ron Jordan Sr., and Thacker and equitable relief from Division.  Plaintiff, however, is not entitled to recover from Bardwell or Glazier-Rines.


Dated: October 13, 2022                         /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                CHIEF UNITED STATES DISTRICT JUDGE